UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
|     Sheri Speer, | : | Case No.: 14-21007 (AMN) |
|         *Debtor* | : | |
| | : | |
| | : | |
| Seaport Capital Partners, LLC, | : | Adv. Proc.: 15-02031 (AMN) |
|         *Plaintiff*, | : | |
| v. | : | |
| | : | |
| Sheri Speer, | : | |
|         *Defendant* | : | |
| | : | Re: ECF Nos. 165, 203 |

**Memorandum of Decision and Ruling Denying Motion to Enforce Settlement**

The defendant in this adversary proceeding and the debtor in the underlying bankruptcy case, Sheri Speer ("Speer"), filed a Motion to Enforce Settlement ("Motion") on June 20, 2016, asserting that the court should enter judgment for Speer based on a purported oral settlement agreement entered into before the Connecticut Superior Court on April 3, 2014. AP-ECF NO. 165.[1] The plaintiff in this proceeding, Seaport Capital Partners, LLC ("Seaport"), filed a reply on August 5, 2016, asserting that no settlement agreement was ever reached. Seaport further argues that Speer's actions in this proceeding, in the underlying chapter 7 bankruptcy proceeding, Case No. 14-21007, filed on May 20, 2014 (the "Main Case"; May 20, 2014 is the "Petition Date")[2] and in an

---

[1] References to the court's docket entries in the main chapter 7 bankruptcy case, case number 14-21007 (AMN), are, "ECF No.___." References to the docket entries in this adversary proceeding, number 15-02031 (AMN) are "AP-ECF No.___."

[2] The involuntary petition was brought by Dr. Michael Teiger, SLS Hearing, LLC, and Clipper Realty Trust. AP-ECF No. 1. While Seaport did not file the initial petition, Speer has claimed that it was filed on Seaport's behalf. Seaport sought to join the involuntary petition as a co-petitioner. See ECF Nos.1, 219.

1

adversary proceeding which she brought against Seaport, are in conflict with her claims in the motion. AP-ECF No. 203; *see Speer v. Seaport Capital Partners, LLC,* Case No. 15-02031 (AMN).

The court held an evidentiary hearing on the Motion on August 11, 2016, (the "Evidentiary Hearing") at which both parties presented evidence and oral argument. Thereafter the court took the matter under advisement and now issues this memorandum of decision and order denying the Motion.

## Jurisdiction and Standing

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) (objections to discharge). This adversary proceeding arises under the chapter 7 Main Case pending in this District; therefore, venue is proper in this District pursuant to 28 U.S.C. § 1409. Seaport has standing to seek the relief sought in the complaint because, as a creditor in the Main Case it may object to the granting of a discharge pursuant to 11 U.S.C. § 727(c)(1).

## Background

Prior to the Petition Date, Seaport filed a number of foreclosure actions (the "New London Foreclosures")[3] against Speer in the Connecticut Superior Court. These actions were stayed[4] on the Petition Date upon the filing of the Main Case. Speer was

---

[3] *Seaport Capital Partners v. Speer*, Connecticut Superior Court, Judicial District of New London, Docket Nos. CV-12-6012072, CV-12-6012073, CV-12-6012074, CV-12-6012075, CV-12-6012076, CV-12-6012077, CV-12-6012078, CV-12-6012079, CV-12-6012080.

[4] While the bankruptcy filing appears to have caused the trials in these cases to be stayed upon the filing of an "Affidavit of Speer Bankruptcy" on May 21, 2014, Seaport filed a notice of relief from stay in May, 2015, following this courts' grant of Seaport's motion for relief from stay, and the cases appear to be on appeal to either the Connecticut Appellate Court or Connecticut Supreme Court. See ECF Nos. 498, 552, docket entries for New London Foreclosures, www.jud.ct.gov. The full records of the underlying state court cases are not available to the court. While these matters are state court filings of which the

2

ultimately found insolvent by the court in a November 11, 2014 order (the "Order for Relief"), after trial. ECF 219.[5] The case was converted to a chapter 11 case on Speer's motion on January 5, 2015, and was reconverted back to a chapter 7 case on April 24, 2015. ECF Nos. 297, 305, 515.[6] The Main Case now totals more than one thousand docket entries and has spawned two adversary proceedings, one the present proceeding, *Seaport Capital Partners, LLC v. Speer*, as well as *Speer v. Seaport Capital Partners, LLC,* Case No. 15-2003 (AMN).

*Main Bankruptcy Case*

This court has discussed the procedural history of the Main Case extensively and assumes familiarity with the background set forth in ECF Nos. 219, 515, 556, 684, 685, 676, 807 and 818. The court notes several filings that have some relevance to the present matter because each involved allegations by Speer that she intended to continue litigation against Seaport before the state court; therefore, they contextualize the Motion within the various proceedings.[7]

Seaport moved for relief from stay shortly after the Petition Date on May 20, 2014, regarding two properties that are not at issue in the present motion. ECF No. 20. Speer filed her opposition to the motion for relief from stay, claiming she had an offset against claims made by Seaport by virtue of her counterclaims in the New London

---

court can take judicial notice, aside from the docket entries and certain orders, they are not in an accessible format.

[5] Speer appealed the Order for Relief, ECF No. 219, to the District Court, Docket No. 3:14CV1912 (RNC), the appeal was dismissed on February 18, 2015, reopened on January 29, 2016, and dismissed again on July 15, 2016.

[6] The order converting the case from chapter 11 to chapter 7 is on appeal to the District Court, Docket No. 3:15CV646 (RNC).

[7] This history also provides the necessary context for Seaport's claim, which the court will address in footnote 13, *infra*, that the court should infer from Speer's conduct over the course of the litigation that no settlement agreement was reached.

Foreclosures. ECF No. 33. The court granted the motion for relief from stay. ECF No. 75. Seaport subsequently moved to join as a co-petitioner of the involuntary bankruptcy petition against Speer. ECF No. 91. In her objection to the motion to join, Speer stated that "[t]he record in this matter is already crystal clear that Seaport Capital Partners' claims are in dispute and subject to counterclaims in [the New London Foreclosures] . . . . Moreover this bankruptcy was a device to delay trial in the Seaport matters in the Superior Court and obtain an unfair advantage against the Alleged Debtor [Speer]." ECF No. 93.

Also of note is the court's Order for Relief in which it found Speer was insolvent and determined that Speer had failed to prove that, "the Involuntary Petition was filed in bad faith and for the improper purpose of preventing the Alleged Debtor from prosecuting counterclaims in certain state court foreclosure proceedings brought by Seaport Capital Partners, LLC . . . ." ECF No. 219, p. 4.

Following the conversion of the Main Case from a chapter 11 case to a chapter 7 case, Seaport moved for relief from stay so that it could continue its state court litigation to determine whether the receiver of rents, Attorney Edward Bona,[8] had turned over the full amount of rents he had collected. ECF Nos. 498, 1081. The court granted relief from stay on May 8, 2015. ECF No. 552.[9]

Also of note, the chapter 7 Trustee, Thomas C. Boscarino ("Trustee"), moved to compromise Speer's claims against Seaport along with several other parties, proposing the Trustee would execute quitclaim deeds on certain property to Seaport and stipulate

---

[8]Attorney Bona was also Speer's attorney for the New London Foreclosures, and he has now appeared again as sponsoring counsel for Attorney Vincent Fazzone's motion to appear *pro hac vice*,
[9]Speer filed a motion to reconsider the court's decision granting relief from stay, ECF No. 555, a hearing was held on May 28, 2015, and the matter was placed under advisement on May 28, 2015.

4

to judgment in favor of Seaport in the New London Foreclosures in exchange for Seaport paying twenty thousand dollars ($20,000) to the estate and paying the costs of transferring the properties, along with other stipulations.  ECF No. 725.  Speer objected, asserting that her state court counterclaims were valid, at one point stating that "the state court trial between Ms. Speer and Seaport was scheduled pre-bankruptcy, on May 22, 2014.  Instead of pursuing the trial, two days prior to the scheduled start date, Seaport caused the involuntary petition to be filed."  ECF No. 766, p. 6.  The court approved the motion to compromise on November 10, 2015.  ECF No. 851.  In doing so, it found, *inter alia*, that the compromise would settle nine state court actions.  ECF No. 930, p. 19, 26.  Speer also objected to Seaport's proofs of claim, asserting that the interest rate was usurious, the claims were based on illegal, unregistered securities, and that Seaport lacked the necessary mortgage license.  ECF No. 845.  The court overruled these objections on December 10, 2015.  ECF Nos. 910, 965.

*Adversary Proceedings*

Speer commenced adversary proceeding number 15-2003, *Speer v. Seaport Capital Partners, LLC*, on January 9, 2015, seeking declaratory and injunctive relief that the mortgages in favor of Seaport are invalid and that Seaport's claims in the Main Case are invalid, and claiming abuse of process by Seaport.  Seaport filed the present case, adversary proceeding number 15-2031, on May 29, 2015, seeking denial of Speer's chapter 7 discharge pursuant to 11 U.S.C. § 727(a).  The allegations in Seaport's amended complaint include, *inter alia*, that Speer has transacted her business in cash for the purpose of hindering, delaying, or defrauding her creditors, prevented discovery regarding the disposition of her assets, transferred, removed, destroyed, mutilated or

5

concealed property within one year of the date of the bankruptcy filing, failed to file required bankruptcy schedules and other documents, failed to explain any loss or deficiency of assets, and deliberately withheld information form the court.  AP-ECF No. 36.  Following multiple discovery disputes in this case, including numerous appeals, Speer filed the present Motion claiming that the parties had reached a settlement agreement in the New London Foreclosures prior to the Petition Date, and requesting that the court enforce that settlement agreement and render "judgment on Seaport's claims in accordance with the April 3, 2014 settlement agreement between the parties." AP-ECF No. 165, p. 7.  Seaport filed an objection to the motion on June 21, 2016, and the court heard oral argument and the presentation of evidence by both parties at the Evidentiary Hearing on August 11, 2016.  AP-ECF Nos. 203, 207.

*Parties' Arguments and Evidence*

Speer asserts in her Motion[10] that following significant negotiations, the parties agreed to settle the New London Foreclosures on terms that were read into the Superior Court record on April 3, 2014, approximately a month and a half before the Petition Date.  AP-ECF No. 165, p. 2.  The terms of this purported settlement were as follows:

- Speer was to quitclaim to Seaport the properties for which Seaport held a mortgage, except those properties that were subject to tax foreclosures.  *Id.*
- For those properties subject to tax foreclosures, a judgment of strict foreclosure would enter.  *Id.*
- All reports and documents held by the receiver, Edward Bona, would be turned over.  *Id.*
- The parties' claims and counterclaims would be withdrawn and dismissed, all legal actions and disputes would be settled, neither party would pursue a deficiency judgment, appeal, or other relief against the other.  *Id.*

---

[10]The Debtor filed the Motion as a *pro se*, but obtained an attorney and was represented at the Evidentiary Hearing.

6

Rather than signing the agreement, however, Speer claims Seaport changed its mind and instead arranged for and financed the filing of the involuntary petition that commenced the Main Case.  *Id.*

As evidence of the alleged settlement agreement, Speer submitted as Exhibit A, a transcript of the April 3, 2014 hearing (the "April Transcript") during which she claims a valid and enforceable settlement agreement was formed.  *Id.;* AP-ECF 209, 44:00.

Seaport asserts in its reply that the transcript actually shows no agreement was formed, and that Speer's actions in the Main Case, Speer's adversary case against Seaport, and the present case are inconsistent with the present Motion.  AP-ECF No. 203.  It asserts that Speer repudiated the tentative settlement by email shortly after the April 3, 2014 hearing, that the tentative settlement was made without disclosure of irregularities in the expenses listed in the receiver reports to the Superior Court, and that the tentative settlement was incomplete as to a number of material terms.  AP-ECF No. 203.  Seaport also requests the sanction of an award of attorney's fees Seaport incurred to respond to the Motion claiming the Motion was filed in bad faith.  AP-ECF No. 203.  During the Evidentiary Hearing, Seaport raised the additional argument that an action to enforce a settlement agreement should be brought to the court that receives report of the settlement, here, the Superior Court.

As evidence that no settlement agreement had been made, one of Seaport's attorneys, Donna Skaats ("Skaats"), testified regarding the purported settlement agreement reported during the April 3, 2014 hearing.  Seaport also submitted into evidence several copies of emails from Speer, a transcript of a May 14, 2014 hearing in Superior Court related to different cases (the May Hearing), and a Motion to Postpone

7

trial filed by Speer in one of the New London Foreclosures. Plaintiff's Exh. 1–5. Seaport further asked that the court take judicial notice of various filings in the docket of the Main Case and in Adversary Proceeding 15-2003, *Speer v. Seaport Capital Partners, LLC*. Plaintiff's Exh. 6. Seaport's counsel clarified he was suggesting the court make a negative inference that because Speer had not previously asserted the existence of a settlement agreement, no settlement agreement existed. AP-ECF No. 207, 00:51:50

Following the presentation of evidence during the Evidentiary Hearing, the court instructed Seaport that, if it wished to seek sanctions in the form of attorney's fees, it should file a motion for sanctions following the court's decision on the matter, if the court should find in Seaport's favor. The court took the matter under advisement.

## Discussion

In considering the resolution of this matter, the court will first briefly consider: (1) whether Speer may make a motion to enforce settlement in the bankruptcy court when the purported settlement occurred in the state court; and, (2) whether Speer's allegations support the relief she seeks – a defendant's judgment against Seaport – before turning to the key issue, namely, (3) whether an enforceable settlement agreement in fact exists.

*Applicable Law and Burden of Proof*

The Second Circuit has "often compared stipulated settlements to contracts, and has consistently applied the law of contract to disputes concerning the construction and enforcement of settlements." *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000). "[A]ctions to enforce settlement agreements are essentially state-law

contract claims . . . ." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011). "Claims regarding interpretation of the terms of settlement agreements or plans of allocations are controlled by the forum state's substantive contract law." *In re Bear Stearns Companies, Inc. Sec., Derivative, & Erisa Litig.*, No. 08 CIV. 2793, 2014 WL 4443458, at *5 (S.D.N.Y. Sept. 9, 2014), see also *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).

The burden of proving that a settlement agreement exists is on the moving party here. See *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (burden on summary judgment). "Under Connecticut law the proponent of a contract must prove the existence of a valid agreement by a preponderance of the evidence." *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 447 (2d Cir. 2005).

"The Connecticut Supreme Court has held that '[a] contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation.' *Klein v. Chatfield*, 166 Conn. 76, 80, 347 A.2d 58, 61 (1974)." *Omega Engineering, Inc*, 432 F.3d at 444. "The existence of [that] contract is a question of fact to be determined by the trier on the basis of all the evidence. To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . If the minds of the parties have not truly met, no enforceable contract exists." *Johnson*, 237 F.Supp.2d at 189.

"Parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation." *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007). By the same token, however, "[p]arties who do not intend to be bound until the agreement is reduced to a signed writing are not

9

bound until that time." *Id.* "[E]ven minor or technical changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing. . . . Such changes are relevant, however, only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect." (Internal citation omitted, internal quotation marks omitted.) *Id.*, 130. Where the parties state that a case is settled, but the court contemplates that additional steps must be taken, an oral agreement may be insufficient. *Millgard Corp. v. White Oak Corp.,* 224 F.Supp.2d 425, 433 (D. Conn. 2002).

*Propriety of Enforcing a State Court Settlement in the Bankruptcy Court*

As previously noted, Seaport asserted at the start of the Evidentiary Hearing that a motion to enforce a settlement should be brought in the Superior Court where the alleged settlement was initially entered. Seaport's attorney made passing reference to *Audubon Parking Associates Ltd. Partnership v. Barclay and Stubbs, Inc.*, 225 Conn. 804 (1993), and then proceeded with his argument that there was no enforceable agreement. It is correct that generally speaking "[a]ctions to enforce settlement agreements are . . . to be litigated in the state courts." *In re Am. Exp. Fin. Advisors Sec. Litig.,* 672 F.3d 113, 134 (2d Cir. 2011). Nothing in *Audubon* or the court's independent research suggests that this is an absolute bar to other courts considering whether a settlement agreement exists if they have cause to do so. In the present case, the relief sought – judgment in Speer's favor in this adversary proceeding – is relief that only the

bankruptcy court can provide. Therefore, the court will proceed to consider the other issues.

*Sufficiency of the Allegations*

In reviewing the Motion, the court concluded there are significant discrepancies between Speer's allegation – that the parties agreed to a settlement of the New London Foreclosures – and her requested relief – that judgment enter in her favor in this Adversary Proceeding seeking to prevent her from obtaining a bankruptcy discharge. The amended complaint in the present action concerns Speer's actions as part of the Main Case. AP-ECF No. 36. It does not even reference the New London Foreclosures with specificity.[11] Speer has failed to articulate the connection between the existence of a settlement agreement related to the New London Foreclosures and judgment in her favor in this action.[12] Speer as the moving party bears the burden of demonstrating that she is entitled to the relief she seeks, therefore her failure to articulate a viable legal theory constitutes a sufficient ground for the court to deny the Motion. See *Vt. Teddy Bear Co.*, 373 F.3d at 244. The court will nonetheless consider whether Speer has demonstrated the existence of an enforceable settlement agreement.

*Existence of an Enforceable Settlement Agreement*

The parties' arguments principally focused on whether they had entered into a valid, oral settlement agreement before the Superior Court on April 3, 2014. As stated

---

[11]The motion makes reference to twenty-nine (29) parcels of real estate owned or controlled by Speer, most of which were in foreclosure. AP-ECF No. 36.

[12]Speer may have a legitimate theory that the purported settlement would bar future actions of this sort, or that if the settlement had been finalized Seaport would have no claim in the Main Case and therefore no standing to bring this adversary proceeding, but Speer has not articulated any such theory. The court does not opine on the legitimacy of either of these theories. It merely wishes to illustrate that because Speer was *pro se* when she filed the motion, it has endeavored to construe her arguments broadly.

earlier, for an oral settlement agreement to be binding, the parties' statements must demonstrate their intent to enter into a binding agreement, there must be agreement on all material terms, and the parties must not have intended that any agreement would not be binding until it was reduced to writing.  See *Powell*, 497 F.3d at 129; *Omega Engineering, Inc.*, 432 F.3d at 444.

Here, having considered the evidence presented at the Evidentiary Hearing and the parties' arguments, the court concludes it was Speer's burden to demonstrate the existence of a settlement agreement and she failed for three reasons.  First, the parties did not intend to enter into a binding agreement; second, there are numerous, material terms that were never agreed to, and third, the April Transcript unambiguously shows the parties did not intend to be bound until they had reduced the agreement to writing.

The April Transcript is replete with statements that demonstrate the parties did not believe they had reached an agreement, and therefore did not intend to be bound. As court opened, the Superior Court judge asked if there was a settlement; Attorney Skaats, Speer's Attorney, Attorney Bona, and Speer, representing herself in addition to her attorney, answered as follows:

> "THE COURT:      As a preliminary, let me just ask: Attorney Skaats and Attorney Bona, have you reached an agreement on all issues with regard to the entry of judgments of foreclosure in the pending matters?
> ATTY. SKAATS:   I believe we have.
> ATTY. BONA:     I believe so. Yes.
> MS. SPEER:      I have a question, Your Honor.
> THE COURT:      Good time to ask it.
> MS. SPEER:      The only thing that I was concerned about is whether it should be a deed-in-lieu of or a strict foreclosure."
> Plaintiff's Exh. A, p. 4.

The attorneys' statements that they believed they had a settlement, coupled with Speer's questioning, demonstrates that, at the most, the parties believed they might have reached an agreement. Following this exchange, Speer questioned the ramifications of a deed-in-lieu of foreclosure versus a deficiency judgment. The judge then asked if they wanted "to present the proposed resolution to the Court?" Plaintiff's Exh. A, p. 6. He then discussed scheduling for a second hearing after a writing setting forth the agreement was filed, but stated that he wanted "to get the skeleton on the record now." *Id.*, 7–8. The judge clearly believed that the parties did not intend to be bound to a completed agreement, but rather that they were approaching an agreement. None of the parties corrected the court or insisted that they were ready to enter into an agreement at that time. Speer herself at one point stated that the agreement would not be finalized until the following Friday:

> "MS. SPEER:     Your Honor, by next Friday, we should have it all—
> you know, I'd like to meet with them and finish this by
> next Friday." *Id.*, 25.

The judge questioned the parties as to whether they were entering into the agreement of their own free will and whether they agreed it was a fair settlement, but subsequently stated, "I want an indication then from Attorney Skaats as to when – this is going to be done." Plaintiff's Exh. A, p. 32.

The April transcript also demonstrates the numerous missing terms, such as information regarding money received by the receiver of rents, property values, and amounts of debts. Plaintiff's Exh. A, p. 9, 11. The judge specifically stated, "[y]ou're going to have an agreement on the numbers" and that the parties would file Form 1099 tax reporting forms ("1099 forms"). *Id.*, 24-26. Speer herself stated that she "wanted to

make sure that the number was correct", and didn't think old appraisals represented the current fair market values of the properties. *Id.* Regarding one property, the judge stated that a judgment of strict foreclosure would be entered and the parties would stipulate as to the amount of the debt and the fair market value. *Id.*, 18. At one point, the judge asked Speer:

> "THE COURT:    All right. Good. Is that your agreement, Ms. Speer?
> MS. SPEER:    Your Honor, my agreement was just do everything at once globally and not drag it on.
> THE COURT:    This is a part of your global agreement?
> MS. SPEER:    It is. It just seems like it's open – leaving it open.
> THE COURT:    What's leaving you open?
> MS. SPEER:    If it's open 60 days, if they're giving a motion to open and go 90 days.
> THE COURT:    Only relates to the issue of the receiver of rents. It doesn't relate to you, Ms. Speer.
> MS. SPEER:    Okay." *Id.*, 17.

Finally, the April Transcript suggests that the parties did not intend to be bound absent a written agreement. The court specifically stated as much – "I think I need something in writing" – as did Speer – "I just want to make sure that it's written up . . . ." Defendant's Exh. A, p. 7, 5. The judge also stated that the agreement would be filed, and the parties agreed. *Id.*, 7.

The testimony by Skaats provides further evidence regarding the lack of an agreement. Skaats testified credibly that she was Seaport's attorney during the New London Foreclosures. ECF No. 207, 03:06. She testified that the open terms on April 3, 2014, included the numbers, such as valuations of property that were required to file 1099 forms pursuant to the Internal Revenue Code. *Id.*, 04:42–06:45. She testified Speer stated she would provide her own valuations, but never provided them. *Id.* Skaats also testified the judge asked for the agreement to be in writing. *Id.*, 04:42.

Seaport also submitted several emails from Speer to Skaats into evidence. An email from Speer to Skaats on April 4, 2014, the day after the hearing, also suggests that an agreement was never reached:

> "I have asked my Attorney to withdraw from the case. My original agreement was a global settlement. But as of yesterday the a change had occurred and talk in the hallway from Attorney Weinstein about the receivership and what his plans are. The lender also told me about the conversation you had with Attorney Weinstein and what you said to him. Edwin Baum also tells me what you say to him. Since the receivership still being tried, I min as well go to trial. My counterclaim is up to 2 million dollars. This case was suppose to be settled." [sic throughout] Plaintiff's Exh. 1.

Speer sent a second email to Skaats on April 5, 2014, restating the first and adding, "[w]ith the ongoing litigation with receivership there is NO DEAL." Plaintiff's Exh. 2. Speer also sent a lengthier email on April 7, 2014, stating that she had been motivated to settle but asserting that doing so was now impossible thanks to Skaats' actions. Plaintiff's Exh. 3. These communications demonstrate conclusively that any settlement had broken down by the day following the April Hearing. In addition, there is no reference in any writing to a settlement actually having been reached and Speer produced no writing setting forth the terms of any agreement. The emails and letter continue the story begun with the April Transcript – the parties thought they were approaching a settlement, agreed to many terms, then became intractable over those terms which remained. Skaats testified that she continued to make efforts to settle the case via email with Speer's attorney, but to no avail. *Id.*, 18:30.

Seaport also submitted a second transcript into evidence. Exh. 4. This transcript, of a May 14, 2014 hearing (the "May Transcript") regarding a different group of cases, *Norwich v. Speer*, Connecticut Superior Court, Judicial District of New

15

London, Docket Nos. CV-10-6004921, CV-10-6004290, CV-09-5011792, CV-10-6004288, in which the same judge presided, contains discussion of a settlement. Skaats testified at the Evidentiary Hearing in the present case, and Speer did not offer any counterevidence, that the settlement under discussion at the May 14, 2014 hearing was the same potential settlement discussed at the April 3, 2014 hearing. AP-ECF No. 207, 23:10. In the May Transcript, Skaats stated that the parties were trying to reach an agreement on settlement regarding several cases that were scheduled for trial on May 22, 2014. Exh. 4, pp. 3–4. She stated in the May Transcript that the problem, again, had been lack of clarity on the valuations of the properties, and that the ball was in Speer's court. Exh. 4, p. 9. The Superior Court judge also reiterated that any agreement would have to be in writing, and that if the case was not settled, it would be tried.[13] Exh. 4, pp. 7, 10, 11.

*Findings of Fact*

Based on this evidence, the court finds that:

1. Neither Seaport nor Speer intended to be bound to a settlement agreement of the New London Foreclosures absent a writing when they orally reported to the Connecticut Superior Court regarding their progress toward a settlement agreement on April 3, 2014.

---

[13] Seaport also asks the court to draw a negative inference from the Debtor's failure to assert the existence of a settlement agreement earlier. It is correct that Speer's behavior before this court for over two years has been consistent with the contention she made in 2014, that "[Seaport's] claims are in dispute and subject to counterclaims," and inconsistent with her assertion – made for the first time in the present Motion – that she actually settled with Seaport in April 2014. ECF No. 93. Seaport failed to provide a sound legal basis for the court to draw such an inference, and the evidence presented is sufficient to demonstrate that there was no agreement without drawing one, therefore the court declines to do so.

2. There were numerous, material terms that had not been agreed to at the April 3, 2014 hearing, including valuations of properties and amount of debts.

3. There is no writing setting forth the terms of a written settlement agreement.

*Conclusions of Law*

1. Speer failed to meet her burden of demonstrating that she is entitled to the relief she is seeking in that she has not articulated a viable legal theory connecting an alleged settlement agreement in the New London Foreclosures with judgment in her favor in the present proceeding.

2. Speer failed to meet her burden of demonstrating that an enforceable settlement agreement was reached between the parties.

For the foregoing reasons, the motion must be denied.

Dated: September 19, 2016
New Haven, Connecticut



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut